UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-80072-CR-MARRA(s)

UNITED STATES OF AMERICA

vs.

ROSE MARKS,
CYNTHIA MILLER,
ROSIE MARKS,
VIVIAN MARKS,
MICHAEL MARKS,
DONNIE ELI.
                Defendants.
_____/

**GOVERNMENT'S RESPONSE TO DEFENDANTS'
MOTION FOR A PROMPT REVIEW OF PRETRIAL DETENTION ORDER**

This memorandum is in response to Defendant ROSE MARKS' Motion for a Prompt Review of Pretrial Detention Order.[1] On August 19, 2011, after an extensive hearing, Magistrate Judge James Hopkins issued an order granting the Government's Request for Pretrial Detention as to Defendant ROSE MARKS, as well as her co-conspirators (and family members) CYNTHIA MILLER, ROSIE MARKS, VIVIAN MARKS, MICHAEL MARKS, and DONNIE ELI. Magistrate Judge Hopkins found that Defendants were a risk of flight and a danger to the community and ordered that they be detained pretrial. Defendants now seek to appeal that pretrial detention order.

For pretrial detention to be imposed on a defendant, lack of reasonable assurance of either the defendant's appearances, or the safety of others or the community is sufficient; both are not required.

---

[1] Co-defendants adopted this motion so this response applies to all of the defendants who were ordered detained.

The factors to be considered in the risk of flight analysis are: (1) the nature and circumstances of the offense; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger posed by the defendants' release.  See 18 U.S.C. §3142(g)(1).  The determination of whether a defendant poses a serious risk of flight is made based on the preponderance of evidence.  United States vs. King, 849 F.2d 485, 489 (11th Cir. 1988) (citing United States vs. Medina, 775 F.2d 1398, 1402 (11th Cir. 1985)( the government's burden of proof on the question of risk of  flight is governed by the preponderance of the evidence standard.). After an analysis of the factors, Magistrate Judge Hopkins determined that no conditions or combination of conditions will reasonably assure the appearance of Defendants as required and/or the safety of the community.

     Defendants are charged by way of superseding indictment with conspiracy to commit mail fraud and wire fraud (in violation of 18 U.S.C. §1349), substantive counts of mail fraud (18 U.S.C. §1341) and wire fraud (18 U.S.C. §1343), as well as conspiracy to commit money laundering (18 U.S.C. §1956).   Defendants are members of the same family of gypsies who claim to be fortune tellers, psychic readers and spiritual advisors.  In reality, this is a family whose members  defrauded numerous vulnerable victims.  The United States contends that the fraud approximates $40 million.  Defendants are facing a significant amount of time in prison upon conviction.  Defendants ROSE MARKS, CYNTHIA MILLER and NANCY MARKS are facing a level 39 (262 months to 327 months in prison).  Defendants ROSIE MARKS, VIVIAN MARKS, MICHAEL MARKS and DONNIE ELI are facing a level 35 (168 months to 210 months in prison).  Therefore, if released on bond, Defendants have no incentive to stay within the Court's jurisdiction.

Magistrate Judge Hopkins correctly found at the pretrial detention hearing, that the weight of the evidence against Defendants is overwhelming. Since 1991, over 50 victims were defrauded by Defendants of over $40 million.[2] The female defendants claimed to be psychics, spiritual advisors and/or clairvoyants who could guide their clients through personal difficulties. The defendants used magicians tricks to induce desperate clients, who had experienced personal tragedies, to temporarily convey their worldly possessions, including money, jewelry and expensive property to be cleansed of curses and evil spirits, with the false promise that they (Defendants) would return the money and property after performing certain cleansing rituals. The male defendants engaged in promotion and concealment of money laundering activities and provided security for the operation. The men were responsible for receiving money that their female relatives obtained from clients who thought they were providing money for fortune telling, curing diseases and chasing away evil spirits. Defendants were so blatant in their disregard for their clients that when one of the victims asked that his gold coins be returned, he was told that the gold coins were in the cemetery with Michael the Archangel and only Michael the Archangel would know the location of the coins.

The money, jewelry and other possessions that Defendants promised to return were never returned. Instead they were used to pay for an extravagant lifestyle. Seized at the time of the arrests of the Defendants were the following: a single family residence on the intracoastal waterway at 1319 Seminole Drive, Fort Lauderdale, valued at $1.5 million; a 1998 Bentley; a 2010 Ferrari; a 2011 Land Rover; a 2009 Mercedes; a 1995 Mercedes; a 1989 Mercedes; a 2007 BMW; a 1979 Trans Am; a 2006

---

[2]Since Defendants were arrested, numerous new victims have contacted law enforcement officials to indicate that they were also defrauded. One of the new victims informed law enforcement officials that as recently as the week before defendants were arrested, she mailed and wired significant amounts of money to Rose Marks who she knew only as Joyce Michael. The victim also identified new bank accounts where she was sending the money.

Mitsubishi; a 2010 Expedition; a 2009 Challenger; a 2011 Mercedes; a 2012 Mustang; a 2007 Ducati motorcycle; and a 2007 Harley Davidson motorcycle. Additionally eighty-six (86) gold coins, valued at approximately $200,0000 were seized from a safe deposit box; and four (4) gold coins were discovered at a pawn shop. On August 8, 2011, DONNIE ELI was seen removing the contents of a safe deposit box at a bank. Agents also recovered a treasure trove of jewelry at the residence ROSE MARKS shared with her daughter ROSIE MARKS, son in law DONNIE ELI, and granddaughter VIVIAN MARKS. The jewelry consisted of hundreds of thousands of dollars worth of jewelry, mostly Cartier, Gucci, Tiffany's. The jewelry included over 100 watches, over 400 rings, many of which had diamonds, and over 200 necklaces. Defendants have been using the proceeds of their illegal activity to fund a luxurious lifestyle, and could use the proceeds to flee this Court's jurisdiction.

     Defendants also used various aliases. For example, ROSE MARKS was also known as Joyce Michael. CYNTHIA MILLER was also known as Cynthia Marks. Defendant ROSE MARKS had bank accounts in the name ROSE MARKS and Joyce Michael. Her clients mailed and wired money to various accounts including Rose Marks, Joyce Michael, Peter Wolofsky, Nancy Marks, Atlas Leasing, Debra Bower, Victoria Eli, and Donnie Eli. Obviously, ROSE MARKS was attempting to hide where the money was actually going.

     Co-defendant, VICTORIA ELI, is currently a fugitive. She is aware that there are pending charges against her. She was told by law enforcement officials over the telephone that there was a warrant for her arrest, and that she needed to turn herself in. She told agents that she intended to contact her lawyer and then she would turn herself in. A lawyer claiming to represent her, contacted undersigned counsel and advised that VICTORIA ELI was turning herself in on August 22, 2011. As of August 31, 2011, VICTORIA ELI is still a fugitive and law enforcement officials are searching for

her.  VICTORIA ELI, who is the sister of Defendant ROSE MARKS is illustrative of the fact that Defendats are a risk of flight.  While Defendants have indicated that they would turn in their passports and they would not leave the country if released from pretrial detention, there is nothing to keep them from disappearing within the United States, as VICTORIA ELI has already done.

Defendant claims that as a condition of bond, ROSE MARKS would agree not to engage in spiritual readings and to house arrest with an ankle bracelet. However, such conditions are not sufficient to assure her appearance at trial.  Electronic monitoring does not prevent a defendant from leaving the jurisdiction; it merely informs the authorities that the defendant has already left the jurisdiction.  See United States vs. Townsend, 897 F.2d 989, 995 (9th Cir. 1990)(noting that electronic monitoring does not "offer assurance against flight occurring before measures can be taken to prevent a detected departure from the jurisdiction"); see also United States vs. Neves, 11 Fed Appx. 6, 2001 WL 649892 (1st Cir. 2001) (unpublished) (". . . where there is a particularly strong incentive to flee, the early detection capabilities of electronic monitoring may be insufficient to overcome that incentive and to guard against the risk of flight.")

Magistrate Judge Hopkins, in finding that pretrial detention was warranted, provided the following:

> (1) the weight of the evidence is overwhelming; (2) the nature of the crimes, in that they involve extremely large economic danger to multiple vulnerable victims using unscrupulous, predatory methods over a very long period of time (See United States vs. King, 849 F.2d 485, 487 (11th Cir. 1988) (based upon the legislative history to the Act, "dangerousness" is not limited only to physical harm or injury); United States vs. Giordano,  370 F.Supp 2d 1256, 1270 (S.D. Fla. 2005)("no question that an economic danger, like that posed by a serial defrauder, falls under the broad umbrella of "dangerousness" as that term is used throughout the Bail Reform Act"); (3) the Defendants likely very lengthy sentence upon condition; (4) the Defendants lack of resources and ties to

the community outside of their involvement in the long running family criminal enterprise; (5) the extensive use of aliases; (6) their access to possibly large amounts of unaccounted for liquid assets; and (7) their deep longstanding immersion in a sub-culture that maintains few legitimate ties to the community.  See pages 6-7 of Pretrial Detention Order.

WHEREFORE, based on the foregoing, Magistrate Judge Hopkins correctly held that the Defendants be pretrial detained.  Accordingly, the appeal of the detention order should be denied.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By: */s/ Laurence M. Bardfeld*
Laurence M. Bardfeld
Assistant United States Attorney
Florida Bar No. 712450
500 East Broward Boulevard, Suite 700
Fort Lauderdale Florida 33394
Tel: (954) 356-7255, ext 3611
Fax: (954) 356-7336
E-Mail: Laurence.Bardfeld@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed by electronic filing this 31st day of August, 2011.

*/s/ Laurence M. Bardfeld*
Laurence M. Bardfeld
Assistant United States Attorney