UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-80072-CR-MARRA/HOPKINS

**UNITED STATES OF AMERICA**,

v.

**ROSE MARKS, NANCY MARKS,**
**CYNTHIA MILLER, ROSIE MARKS,**
**VICTORIA ELI, VIVIAN MARKS,**
**RICKY MARKS, MICHAEL MARKS,**
**CONNIE ELI, and PETER WOLOFSKY,**

　　　　　Defendants.

_____/

## MOTION TO RETURN ILLEGALLY SEIZED PROPERTY

COMES NOW the Defendant Rose Marks, by and through her undersigned attorney, and moves this Court to order the return by the Government of property it illegally seized from Rose Marks and her family and illegally retained after repeated demands for its return and states as follows:

## FACTUAL BACKGROUND

1.　　On August 12, 2011 the Government applied to and received from Magistrate Judge Lurana S. Snow a search warrant to search for and seize certain designated property alleged to be located at a single family residence located at 1319 Seminole Drive, Fort Lauderdale, Florida.  The Government also received search warrants for three other residences, two safe deposit boxes and a mini storage warehouse.

2.　　The Application for Seminole Drive Search Warrant (attached hereto and made part hereof as Exhibit "1,") identifies the articles to be searched for and seized as the following: "journals, notebooks, computers, recordings, loan documents, pawn documents, bank account

{R6115075_1}

documents, safe deposit box documents, financial records, vehicles titles, tax information documents, coins, cash, jewelry, phones and other things of value that constitute evidence of crimes, contraband or fruits of a crime, more particularly described in Attachment B."

3.      The aforementioned Attachment B (which is part of Exhibit "1" mentioned above), does not further describe any of the items to be seized but rather merely parrots the language quoted above from the Application for a Search Warrant.  Simply stated, this is because the Government was not searching for any piece of jewelry in particular; it was on a fishing expedition.

4.      The Affidavit in Support of the Search Warrant request, which is mistakenly labeled Affidavit in Support of Seizure Warrant (attached hereto as Exhibit "2" and made a part hereof), recites the training of the agent involved, recites the nature and scope of the investigation, and recites on pages 3, 4, 5 and 9 the general statements that "victims" would give Rose Marks and her family members amongst other things jewelry and other valuable items.  It further states that Rose Marks and her family retained these items and never returned them.  In no place in the nine page Affidavit is that jewelry ever described with any particularity or is there a statement as to which alleged "victims" gave Rose Marks and her family any particular jewelry.  The last full paragraph, paragraph 23 of the Affidavit on page 9, states "your affiant has reason to believe that at 1319 Seminole Drive, Fort Lauderdale, Florida, a single family residence there is evidence of a crime, contraband and fruits of a crime, and property designed for the use, intended for use, or used in committing a crime."

5.      The Application for a Search Warrant (Exhibit "1"), which that the previously mentioned Affidavit (Exhibit "2") supports, states that there is a basis for the search under Fed. R. Crim. P. 41(c) for evidence of a crime, contraband, fruits of crime or other items illegally

possessed; property designed for use, intended for use or used in committing a crime.  The
Search Warrant authorizes the search for evidence of crime, contraband, fruits of a crime or other
items illegally possessed and property designed for use, intended for use or used in committing a
crime.  As discussed below, although the Government seized hundreds of pieces of jewelry, there
is no basis to establish that the overwhelming majority of it falls into any of the enunciated
categories.

6.      In this Motion undersigned counsel will  establish that the then four year agent
signing the Affidavit under the guidance and behest of Case Agent, now retired Fort Lauderdale
Detective Charles Stack, had no probable cause to believe that there was particular evidence of a
crime, contraband or fruits of a crime or property designed to use to commit a crime in the
residence.  But, more importantly, it will demonstrate that the agents utilized the unparticularized
warrant to conduct a general seizure of items unrelated to any crime. This Motion will establish
that the agent's seizure was well beyond the scope of what is lawfully authorized.   The
Government seized property that they had no probable cause to believe was evidence of a crime,
contraband, fruits of a crime or other items legally possessed or property designed for use or
intended for use or used in committing a crime.  Further, ignoring repeated demands, for over
eight months, the United States Attorney's Office has continually refused to return property
which they know was not evidence of a crime, contraband, fruits of a crime or other items
illegally possessed or property designated for use, intended for use, or used in committing a
crime.  This failure to return what is clearly illegally obtained is evidence of the malicious nature
of the search and seizure and belies any future claim of good faith reliance on a defective
warrant.  Based on this misconduct both by the agents conducting the search and by the United
States Attorney's Office in refusing to return property that they are holding improperly, we make

this Motion to the Court to return the jewelry seized.  At this time we are not asking for the suppression of any evidence because, tellingly, the Government has identified no evidence that it will use which resulted from this search.

7.      Attached hereto and made part hereof as Exhibit "3" is the 31 page Inventory listing all items seized at the site of Rose Marks' residence, 1319 Seminole Drive, Fort Lauderdale, Florida upon the execution of the Search Warrant on October 16, 2011, which search took from 7:01 a.m. through 2:24 p.m.  In addition to the items seized in that almost 7½ hour search we are also attaching for the Court's edification as Exhibit "4" the 4 page Inventory of all items seized at the site of a separate search warrant executed at the home of Cynthia Miller and Michael Marks on that same date from 6:30 a.m. to 8:20 a.m.  Further seized that day and annexed hereto as Exhibit "5" is a two page single spaced list of jewelry items seized from the New York apartment of Ricky and Nancy Marks; and Exhibit "6", three pages single spaced of items allegedly seized from Rose Marks from an address at 1003 S.E. 17th Street in Fort Lauderdale, Florida.  Also, as Exhibit "7", attached is a two page list of items seized from the safe deposit box of Michael Marks at Bank of America at 1300 East Sunrise Boulevard, Fort Lauderdale, Florida.   Finally, as Exhibit "8" is a list of jewelry seized without warrant, by intimidation, from Quick Cash Pawn belonging to Michael Marks, Rose Marks, Victoria Eli, valued at an excess of $25,000 and some additional items seized from a warehouse.

8.      By way of explanation as to the amount of jewelry seized, undersigned counsel would quote from pages 30 and 31 of the transcript of the Detention Hearing held before the Honorable United States Magistrate Judge James M. Hopkins on August 19, 2011, of that transcripts Assistant United States Attorney Laurence Bardfeld states, starting at page 30, line 2 continuing through page 31 at line 3:

"In addition to that, a lot of jewelry.  When I asked the agent to describe how much jewelry she said I can't even begin to tell you how much jewelry we're talking about that was seized from the house.  She said the jewelry was probably worth hundreds of thousands of dollars because most of the jewelry was Cartier, Gucci, and Tiffany's.  The agent who was responsible at the search site said that they discovered over a hundred watches, over four hundred rings and many of those rings had large diamonds in them, over two hundred necklaces.

In addition, during the search of the house they discovered a bag of lighters and there were a number of lighters.  They said okay, I'm not sure what these are but they were seized.  The agent went online on Google looking at the lighters just to see what they were worth and a couple of them were gold lighters.  They said that the lighters were worth somewhere around fifteen thousand dollars.  I don't know how a lighter could be worth that much but that's what they said when they looked at Google.  They also found a small amount of cash, about four thousand dollars in cash.

What I'm trying to say by these seizures is this isn't a group of individuals who are just on paper taking money away.  These guys are taking money from the victims or taking jewelry or gold coins from the victims and then keeping it themselves.  There's a tangible, physical asset that they had in their possession."

9.      By Mr. Bardfeld's own admission, the agent states hundreds of thousands of dollars worth of jewelry including over a 100 watches, over 400 rings, many with diamonds, and over 200 necklaces, and gold cigarette lighters worth tens of thousands of dollars were seized. But there has been no response to the Standing Discovery Order which identifies any of these items as evidence to be used at trial.  The Government has asserted that in the future, they may try to have an agent see if any victim can identify any of these items seized eleven months ago.

10.     Inherently problematic is that virtually all of the jewelry seized was either inherited from deceased relatives, gifted from relatives or purchased legitimately.  Upon information and belief the overwhelming proportion of the above mentioned jewelry has never been nor will ever be able to be identified by the alleged "victims" in this case as obtained

illegally from them.   Further, on page 9 of the above mentioned Affidavit, Exhibit "2", at

paragraph 22 the Affiant states:

> "Other than their fortune telling scheme, Rose Marks, Rosie Marks,
> Donnie Eli and Vivian Marks had no legitimate occupations or any
> other sources of income.   Review of tax return information indicates
> that the income of Rose Marks, Rosie Marks, Donnie Eli and Vivian
> Marks was minimal and insufficient to justify their lavish lifestyle."

11.     There are two problems with that statement.   First the Government has evidence

which clearly establishes that Rose Marks and the other Defendants won significant amounts of

money, at times in excess of $1 million a year, at Seminole Bingo, the Hard Rock Casino, and

other places, as reports of these winnings were turned into the Internal Revenue Service by these

establishments bearing the Defendants' Social Security Numbers, and copies were later seized

with Rose Marks' records.   Further, the IRS was a participant in this investigation.   Also the

Government has copies of at least one gift letter leaving significant amounts of jewelry to one of

the Defendants.   Exhibit "9" is a gift letter from Rose's mother, Rose Eli, (in the possession of

the Government) to Ricky Marks giving him all of her jewelry, coins, legal tender, currency and

family heirlooms and other sentimental property..   Finally, the Government has pictures, some of

them given to them by the defense attorneys, of these Defendants or their now deceased

relatives, wearing this jewelry prior to the time frame alleged in the conspiracy (as an example

see Exhibit "10", which is a photograph of Rose Marks' mother-in-law more than 50 years ago

wearing numerous gold coins which Rose inherited and Exhibit "11" is a picture of Rose and her

husband taken over 30 years ago with Rose wearing a diamond necklace, diamond bracelet and

diamond ring).   The Government has also conceded in its Response to a Motion to Dismiss the

Indictment on First Amended Grounds that at least a part of the Defendants' licensed businesses

were licensed and legitimate.   Spiritual advising, concedes the Government, and fortune telling is

not a crime, it is only when it is used to obtain money or other items illegally that it becomes a crime. Thus, the Defendants had income from the portion of their business that the Government concedes was not illegitimate.

12.     However, the Defendant has no obligation to establish how she and her family obtained the jewelry.  The Government must establish that the warrant was a particularized, not a general, warrant; and that the seized and retained items that were fruits of the crime or specific evidence of the crime.  They can do no more than say "the defendants had too much jewelry."

13.     All of the above mentioned facts were told specifically to the United States Attorneys in this case as far back as eight months ago.  Mr. Bardfeld assured undersigned and other defense counsel that he was going to show the jewelry that was seized to "victims" to see if any of them could identify it as "their jewelry".  Even though the agents should have had this information prior to the search so they knew what to seize, undersigned counsel agreed to wait before filing this Motion for months so that the Government could, belatedly, determine whether any of the perhaps more than $1 million worth of jewelry, was either fruits of a crime, evidence of a crime, or a method or means to be used to commit a crime.  Since that initial conversation with the Government, counsel has repeatedly hectored the prosecutors to return the property that was seized beyond the scope of a legal Search Warrant and at least identify that property which was "evidence" or "fruits of a crime"; but to no avail.  We have been continually told that decisions on this matter would be made by supervisors.  Thus, the hierarchy of the United States Attorney's Office is a part of this outrageous conduct.  The Government has not returned any of the property that it improperly seized and illegally retains and has not identified any of the property seized to be used as evidence in this case.  To be clear, we are not asking that a special prosecutor be appointed to determine whether the agents or prosecutors be indicted pursuant to

Title 18 United States Code Section 2235 for their malicious actions. We are merely seeking the return of the illegally seized property.

14.     The malicious general seizure pursuant to the general Search Warrant; and, more importantly, the withholding from the Defendants of their rightful property, has created significant harm to the Defendants and is further evidence of investigative and prosecutorial misconduct in this case. As this Court is aware, Rose Marks has now had to enter into a contract to sell her home of 14 years, because she could not pay the mortgage and in order to pay for this case and to support herself and her family. Had the Government returned the jewelry which they say is worth at least hundreds of thousands of dollars, and we suggest it is worth even more, Mrs. Marks and her family could have sold or pawned this jewelry and used that to live on and not had to sell her house. This misconduct by the Government has gone even further in that they have not identified any of these items as evidence.

## LEGAL ARGUMENT

The Fourth Amendment provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Eleventh Circuit has held that this provision requires that those seeking a warrant must show probable cause that contraband or evidence of a crime will be found in the area to be searched, *see United States v. Travers*, 233 F.3d 1327, 1329 (11th Cir. 2000), and that the warrant must describe the items to be seized and the place to be searched with particularity, *see United States v. Lockett*, 674 F.2d 843, 846 (11th Cir. 1982). The jewelry warrants fail to meet either of these constitutionally mandated requirements; however, the method of the execution of the warrants exacerbated the deficiencies of the warrants and resulted in as general search and seizure.

I.      **THE SEIZURE WARRANTS VIOLATE THE FOURTH AMENDMENT BECAUSE THEY LACK PARTICULARITY IN RELATION TO THE OFFENSE ALLEGED**.

The Fourth Amendment requires that search warrants "particularly describe[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  Only the fruit, instrumentalities and evidence of a crime are lawfully subject to seizure under the Fourth Amendment. *Zurcher v. Stanford Daily*, 436 U.S. 547, 554 (1978). "A general order to explore and rummage through a person's belongings is not permitted." *United States v. Cook*, 657 F.2d 730, 733 (5th Cir. 1981). "[R]esponsible officials, including judicial officers, must take care to assure that [searches] are conducted in a manner that minimizes unwarranted intrusion upon privacy." *Andreson v. Maryland*, 427 U.S. 463, 482 n.11 (1976).

The jewelry warrants and seizures as executed are not particularized in any way. They do not identify a specific identification of items to be seized, dates of acquisition, personal items versus business property. In the warrant, the Magistrate Judge at least attempts to limit the search and seizures to evidence or fruits of the specified, or, in fact, any, crimes. However, the inexperienced agents just "generally" seized all jewelry.  Even now, the Government is asking the agent to meet with victims to see if "any jewelry can be identified."

The Fourth Amendment requires that warrants "particularly describe the place to be searched, and the persons or things to be seized." This requirement of particularity prevents "general, exploratory rummaging in a person's belongings," Coolidge v. New Hampshire, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971), but elaborate specificity is unnecessary. The description is considered "sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." United States v. Cook, 657

F.2d 730, 733 (5th Cir.1981). The standard "is one of practical accuracy rather than technical

nicety." United States v. Johnson, 541 F.2d 1311, 1313 (8th Cir.1976).

In <u>United States v. Betancourt</u>, 734 F.2d 750, 754 (11th Cir. 1984), Judge Fay wrote

> The Fourth Amendment requires that warrants "particularly describe the place to
> be searched, and the persons or things to be seized." This requirement of
> particularity prevents "general, exploratory rummaging in a person's belongings,"
> Coolidge v. New Hampshire, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d
> 564 (1971), but elaborate specificity is unnecessary. The description is considered
> "sufficiently particular when it enables the searcher to reasonably ascertain and
> identify the things authorized to be seized." United States v. Cook, 657 F.2d 730,
> 733 (5th Cir.1981). The standard "is one of practical accuracy rather than
> technical nicety." United States v. Johnson, 541 F.2d 1311, 1313 (8th
> Cir.1976).The property in this case was described in each warrant as follows: all
> financial records, including but not limited to all documents showing source and
> amount of income and disbursement, and patient records, limited to those records
> showing the dates of patient visits, all diagnostic tests performed and results
> obtained, diagnoses made, medications prescribed and the name of the diagnosing
> physician, from on or about June 15, 1981 [January 1, 1982], to the present which
> are evidence of violations of Title 21, United States Codes, Section 841(a)(1).This
> description prevented a general search and was as specific as the circumstances
> and nature of the activity permitted. See, United States v. Slocum, 708 F.2d 587
> (11th Cir.1983).

The former Fifth Circuit found an even more particularized description in a warrant

authorizing the seizure of all "cassettes on to which ... copyrighted films ... have been

electronically transferred and recorded" to be overbroad and lacking sufficient particularity in a

case involving the alleged illegal reproduction of copyrighted motion pictures onto videotape

cassettes. *Cook*, 657 F.2d at 733-34.  The court based this finding on the failure of the warrant to

"use available directions to specify tapes and films and to describe methods by which the items

to be seized could be determined." Id.  The same is true here.  The warrants here are actually

even less particularized than the warrant in *Cook* because they do not even limit the seizure to

the alleged illegal actions, whereas the cassettes authorized for seizure in *Cook* were limited to

"illegally obtained films." 657 F.3d at 733-34.  And, again, the agents failed to conduct the search in a manner that could have limited the general search warrant to a particularized seizure, rather than "scooping up" everything.

More recently, the Eleventh Circuit has found much more particularized warrants in the business context to still be overbroad.  *See Travers*, 233 F.3d at 1330-31 (agreeing with district court that warrant was overbroad and lacked sufficient particularity when it authorized the seizure of "all documents involving real estate, litigation, property, mailings, photographs and any other material reflecting identity, and anything reflecting potential fraud"); *United States v. Norton*, 867 F.2d 1354, 1360 (11th Cir. 1989) (agreeing with district court that warrant authorizing seizure of "all corporate records ... which are evidence and instrumentalities of the offense[s]" alleged was overbroad).  The warrants at issue here are even less particularized than the overbroad warrants in *Travers* and *Norton* because they contain no limitation to evidence of the specified crimes.  As noted, seizing items of long personal meaning – essentially memories of sentiments that come close to the core protection of the Fourth Amendment – simply cannot be sustained. *See Voss v. Bergsgaard*, 774 F.2d 402, 405 (10th Cir. 1985) ("The insufficient particularity of the warrants is further illustrated by some of the items actually seized under their terms ... .").  As an illustration of the general nature of the seizure, the agents in the instant case took locks of the Defendant's husband's and parents' hair that were sealed with wax according to cultural traditions.

There is no reason why the warrants were not particularized if the agents had received from "victims" descriptions of jewelry. There is no reason why the search was not particularized to items known to be evidence or fruits of a crime.  There is no reason why, in the eleven months since the search, the massive amounts of jewelry seized have not been shown to victims to be

identified and that which is not evidence returned.  The failure to even take this belated curative step by the agents confirms the malicious nature of the search and the seizures and belies any attempted claim of good faith by the Government.  The government has photographic and other evidence confirming that even if properly limited in its scope, the search and seizure should not result in the continued confiscation of property that is not within the scope of the government's allegations.  *See United States v. Carey*, 172 F.3d 1268, 1276 (10th Cir. 1999); *see Cook*, 657 F.2d at 733 ("Failure to employ the specificity available will invalidate a general description in a warrant."); see *also United States v. Barbuto*, Case No. 2:00CR197K, 2001 WL 670930, * 5 (D. Utah April 12, 2001) (search warrant lacked particularity when it contained no search methods or criteria for search for computer information).

## II.    THE SEARCH PURSUANT TO THE WARRANTS VIOLATED THE FOURTH AMENDMENT BECAUSE THEY SEIZED ALL OF THE JEWELRY WITHOUT PROBABLE CAUSE.

There was no probable cause to support the seizure of *all* of the jewelry.

### A.  The Affidavits Do Not Establish A Connection Between The Entirety of the Jewelry And Any Criminal Activity.

In order to establish probable cause to support issuance of a warrant, there must "be a 'substantial basis' to conclude that the instrumentalities of the crime will be discovered on the searched premises." *Lockett*, 674 F.2d at 846 (citations omitted). In order to meet this requirement, "[t]he affidavit should establish a connection between the defendants and the [area] to be searched and a link between the [area] and any criminal activity." *United States v. Martin*, 297 F.3d 1308, 1313-14 (11th Cir. 2002).

That standard was not met, and indeed the Government did not even seek to meet it, in this case.  Because the supporting affidavit does not set forth any factual basis for identifying

that evidence of the specified crimes and called for seizure of all items identified as jewelry, there was no probable cause supporting issuance of the warrant.  *See Lockett*, 674 F.2d at 846-47 (no probable cause to support issuance of warrant where supporting affidavit disclosed no facts upon which magistrate could reasonably infer that evidence of the crime was located on defendant's property); *United States v. Flanagan*, 423 F.2d 745, 746 (5th Cir. 1970) (no probable cause to believe that stolen goods were at defendant's home when supporting affidavit contained no factual observations that stolen goods were at the home).

Instead of providing sufficient factual basis to support a finding of probable cause, the affidavit relied on conclusory assertions or generalizations that show much too wide a seizure net was employed.  *See Illinois v. Gates*, 462 U.S. 213, 239 (1983) ("mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause" insufficient to establish probable cause); *Nathanson v. United States*, 290 U.S. 41, 47 (1933) ("[m]ere affirmance of belief or suspicion is not enough" to support probable cause for warrant); *see also United States v. Jiminez*, 224 F.3d 1243, 1248 (11th Cir. 2000) (describing insufficient conclusory affidavit: "truly conclusory affidavit would have gone all the way and actually stated that probable cause exists").  Although there is some attempt in the warrant to suggest that any possession of the Defendant was obtained with illegal funds, as stated above, the Government, at the time of the search and seizure, had documents in its possession that the Defendant had won millions of dollars in legal gambling, had inherited jewelry and other items.  Further the government has conceded that the bulk of the Defendants' family businesses were legal and licensed.  Thus, they were aware that the businesses generated legitimate income.

### B. The Information Upon Which The Warrants Were Based Was Not Time Sensitive and Thus Caused an Improper Seizure, Requiring Return of Property.

The warrant lacks any connection to date of offense and date of acquisition of the property.  By failure to even seek to meet this crucial evidentiary link, the government forfeited any continued claim to maintaining the property.  *See United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994) ("For probable cause to exist, however, the information supporting the government's application for a search warrant must be timely"); *Sgro v. United States*, 287 U.S. 206, 210 (1932) ( "[I]t is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at the time.").

### III.  ALL OF THE JEWELRY SEIZED PURSUANT TO THE WARRANT MUST BE RETURNED.

Return of the erroneously seized evidence is the appropriate remedy for this violation of the Fourth Amendment. *Travers*, 233 F.3d at 1329; *see also Wong Sun v. United States*, 371 U.S. 471, 491-92 (1963); *United States v. Drosten*, 819 F.2d 1067, 1071 (11th Cir. 1987).

WHEREFORE it is respectfully requested that this Court order the Government to return of the items that were seized or retained in the search of the Defendant Rose Marks' home.

Dated this 20th day of July, 2012.

Respectfully submitted,

By:     s/ Fred A. Schwartz

Fred A. Schwartz, Esq.
Fla. Bar No. 360538
*Attorney for Defendant Rose Marks*
Kopelowitz Ostrow, et al.
700 South Federal Highway, Suite 200
Boca Raton, Florida  33432
schwartz@kolawyers.com
Telephone:  (561) 910-3070
Facsimile:  (561) 910-3080

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically

filed via CM/ECF on this 20th day of July, 2012.


s/ FRED A. SCHWARTZ
Fred A. Schwartz, Esq.