UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-80072-CR-MARRA/HOPKINS(s)(s)(s)

UNITED STATES OF AMERICA

vs.

ROSE MARKS, et al,

        Defendants.

_____/

**REPORT AND RECOMMENDATION ON DEFENDANT ROSE MARKS'
MOTION TO DISMISS (DEs 727, 728)**

Defendant Rose Marks' Motion to Dismiss the Third Superseding Indictment and the Previous Three Indictments with Prejudice (DE 727) and Memorandum of Law (DE 728) are before the Court on an Order of Referral (DE 734). The Government responded (DE 749) and Defendants Rose Marks and Cynthia Miller replied. (DEs 754, 758). A hearing as to defendants Rose Marks, Nancy Marks, Cynthia Miller, Victoria Eli, Ricky Marks, and Michael Marks on the motion was held on February 20, 2013. (DE 790). The parties were invited to submit post-hearing memoranda of law within one week of the hearing, but no memoranda were filed.

The defendants seek to dismiss the Third Superseding Indictment and all prior indictments with prejudice, asserting that investigatory and prosecutorial misconduct has "so tainted [the defendants'] rights to a fair trial" that dismissal with prejudice is warranted (D.E. 727 at p.2).

## History of the Case

On or about May 19, 2011, a federal grand jury, sitting in Fort Lauderdale, Florida, FGJ 10-1003

(FTL) returned an indictment against Rose Marks and nine other defendants, charging multiple offenses including mail and wire fraud conspiracy, substantive counts of mail and wire fraud, and money laundering conspiracy, and forfeiture allegations. The indictment was sealed and no arrests were made at that time.

On August 11, 2011, Federal Grand Jury 10-1003 returned a superseding indictment against the same defendants. That indictment was sealed as well. Differences between the original indictment and the first superseding indictment were that a new victim was added, in paragraphs 36 and 60, a modification of the language of a money laundering count was made, in paragraph 65, and a modification was made to the forfeiture allegations.

On or about August 16, 2011, the defendants, with the exception of Victoria Eli, were arrested and appeared in court on their initial appearances. Victoria Eli surrendered on October 7, 2011.

On January 12, 2012, Federal Grand Jury 10-1003 returned a second superseding indictment against the defendants. The second superseding indictment added several victims and deleted paragraph 44, pertaining to alleged victim J.C.

On November 29, 2012, Federal Grand Jury 11-02 (WPB) returned a third superseding indictment against nine of the defendants.

## ANALYSIS

The Court's supervisory powers give it the authority to dismiss an indictment if "a sufficiently egregious case of misconduct is shown." *United States v O'Keefe,* 825 F.2d 314 (11th Cir. 1987). However, the dismissal of an indictment for prosecutorial misconduct is an "extreme sanction which should be infrequently utilized". *Id; United States v Pendleton*, 447 Fed.Appx. 978 (11th Cir 2011); *United States v Jordan*, 316 F.3d 1215, 1249, fn.68 (11th Cir. 2003); *United States v. Pabian,* 704 F.2d 1533, 1536 (11th Cir. 1985). Even the presentation of false testimony before a grand jury is not grounds for dismissal

2

unless the prosecutor "knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony and that the falsehood was material." *Pendleton, supra; United States v Akel*, 337 Fed.Appx. 843 (11th Cir. 2009), citing *United States v. Woodruff*, 296 F.3d 1041, 1043 n.1 (11th Cir. 2002).

"[A]s a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v United States*, 487 U.S. 250, 254, 108 S.Ct. 2369, 2373 (1988); *United States v. O'Keefe, supra*; *United States v Pettway*, 129 Fed. Appx. 583 (11th Cir. 2005). Prejudice means that the violation "substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia*, 487 U.S. at 256, 108 S.Ct. at 2374.

In the *O'Keefe* case, the defendant sought dismissal of the indictment based on alleged prosecutorial misconduct before the grand jury, claiming the prosecutor 1) made gestures and comments indicating disbelief or exasperation of some witnesses' testimony; 2) exhibited "inappropriate behavior" towards the defendant's wife when she invoked her spousal and Fifth Amendment privileges; 3) possibly leaked grand jury information to the media; and 4) threatened certain uncooperative witnesses with possible prosecution. The Eleventh Circuit affirmed the trial judge's refusal to dismiss the indictment, despite the trial judge's finding "considerable substance" to the allegations, because the defendants had demonstrated no prejudice as a result of the misconduct. As the Court noted, proof of prejudice is an essential element to any request for dismissal based upon alleged prosecutorial misconduct. *O'Keefe*, 825 F.2d at 318.

The Eleventh Circuit recognizes the defense of outrageous governmental conduct under the Fifth Amendment's guarantee of due process. *See United States v. Sanchez*, 138 F.3d 1410, 1413

3

(11th Cir. 1998). *See also United States v. Ciszkowski,* 492 F.3d 1264, 1270 (11th Cir. 2007) (majority opinion). This defense focuses on the tactics employed by law enforcement officials to obtain a conviction for conduct beyond the defendant's predisposition. *Sanchez*, 138 F.3d at 1413.

The Eleventh Circuit Court of Appeals recently questioned the viability of this defense:

> We have never applied the outrageous government conduct defense and have discussed it only in dicta. *See United States v. Ciszkowski,* 492 F.3d 1264, 1272 (11th Cir. 2007)(Carnes, J., concurring) (describing the outrageous government conduct doctrine as rooted in "speculative dicta and noting that we have never "reversed a conviction or vacated a sentence on th[is] basis"). Several of our sister circuits have either rejected this defense completely [citation] or have been sharply critical of the defense, see eg *United States v Tucker*, 28 F.3d 1420, 1422-27 (6th Cir. 1994)(citing separation of powers concerns and discussing the lack of authority for any argument that outrageous government conduct violates due process); *United States v Santana*, 6 F.3d 1,3 (1st. Cir. 1993)("Outrageous misconduct is the deathbed child of objective entrapment, a doctrine long since discarded in the federal courts.")

*United States v Jayyousi,* 657 F.3d 1085 at 1111-12 (11th Cir 2011).

In *Jayyousi*, defendant Jose Padilla claimed that he had been mistreated while in custody and sought dismissal of his indictment based on this "outrageous government conduct." Affirming the trial judge's denial of this pre-trial motion, the Court noted that the defendant did not allege government intrusion into the underlying criminal conduct but rather claimed alleged mistreatment which occurred after the conclusion of his criminal acts. Thus, the Court concluded, even if the doctrine existed, it would not have applied in this situation. *Id*. *See also United States v Charlestain*, 2012 WL 1947328 (S.D. Fla. May 2012)(declining to consider motion to dismiss indictment for alleged misconduct based on claim that officers tried to interview her in violation of her rights);*United States v Treisback*, 2012 WL 1156436, adopted in 2012 WL 1156427 (N.D. Ga. April 2012)(denying motion to dismiss based on claim of outrageous conduct of law enforcement during search of defendant's home).

Defendant's claims of prosecutorial and government misconduct may be broken down into

4

several categories of alleged wrongdoing:

1. That the government engaged in misconduct before the original grand jury, a) by failing to present sufficient testimony that supported some of the allegations, b) by inserting allegations in the indictment that differed from interview reports of several victims; and c) by improper ethnic stereotyping;

2. That search and seizure warrants contained falsehoods;

3. That the government refused to turn over *Brady* and *Giglio* material;

1. Defendant's Allegations of Misconduct Before the Original Grand Jury

The defendant asserted that the government committed misconduct by inserting allegations in the initial and first superseding indictment regarding two alleged victims whom the government failed to interview prior to the return of the indictment. One of those, J.C., a client of defendant Victoria Eli, subsequently furnished an affidavit to the defense, expressing that he was satisfied with the services of Victoria Eli. The government then eliminated reference to J.C in the Second Superseding Indictment and thereafter. The Government asserts that the other victim, C.C. was later verified to be a victim.

The government's concedes that its failure to interview these individuals prior to inserting them into the indictment was "certainly ill advised, as well as it was for the government to use 'cookie cutter' language to describe presumed interactions with the defendants when such had not been verified." (DE 749, p. 9; DE 412, p. 5). Magistrate Judge Vitunac found that "specific factual allegations were made to the grand jury as to specific defendants and their alleged victims that were not based on any specific investigation as to those facts." (DE 412, p. 11). She reviewed the earlier grand jury transcripts and concluded that aspects of the government investigation were "slipshod," but noted that the sufficiency of the evidence to establish probable cause before a grand jury was

not subject to court review, citing *United States v. Calandra*, 414 U.S. 338, 344-45 (1974) (D.E. 412, p. 5-7). She also found that "it is clear that the testifying agent did not perjure himself." (D.E. 412, p.5). It is well established that an indictment may not be attacked based upon the sufficiency or competency of the evidence presented to the grand jury. *United States v. Kaley,* 677 F.3d 1316 (11th Cir. 2012)*; Costello v. United States*, 350 U.S 359, 76 S.Ct. 406 (1956); *United States v Williams*, 504 U.S. 36, 112 S.Ct. 1735 (1992); *see also United States v. Calandra,* 414 U.S. 338, 345, 94 S.Ct. 613 (1974).

A superseding indictment replaces the original indictment. *See United States v McKay*, 30 F.3d 1418, 1424 (11th Cir. 1994) (filing superseding indictment has same effect as dismissing original indictment and filing new one). The Government has conceded that the Third Superseding Indictment is the only charging document that it will be proceeding to trial on. Absent an improper motive, such as harassment or vindictiveness, a prosecutor may seek a superseding indictment at any time prior to trial. *United States v Barner*, 441 F3d 1310 (11th Cir. 2006). Since there is no allegation that Federal Grand Jury 11-02 (WPB) was tainted by prior grand jury events, the defendant cannot establish that she is prejudiced by events that occurred before Federal Grand Jury 10-1003. *See United States v Collins*, 300 Fed. Appx. 663, 2008 WL 4898436 (11th Cir. 2008) (alleged violation of law before original grand jury cured by re-presentment to new grand jury); *United States v Bok*, 1997 WL 148815 (S.D. NY 1997) (the returning of a superseding indictment by a different grand jury cures any prejudice to the defendant that may have been caused by an improper original Indictment). See also, *United States v Fisher,* 692 F.Supp. 495, 500-501, 507 (E.D. Pa 1988)*, appeal dismissed,* 871 F.2d 444 (3rd Cir. 1989)(Government's second superseding indictment cured any prejudice which may have resulted to these defendants from the prosecution's

prior errors). "Slipshod" insertion of unverified allegations in an indictment are very serious lapses on the part of the Government, but no prejudice has been shown by the Defendant.

Defendant also alleged that the government committed misconduct by ethnic stereotyping. The Government did allow testimony in front of the original grand jury that used ethnic stereotyping to paint the Defendants as members of gypsy organized crime that have no psychic abilities but rather are only interested in stealing from "American[s]." (April 7, 2011 transcript, p. 45-47; April 14, 2011 transcript, p. 36; May 19, 2011 transcript, p. 67).

Historically, being of Romany descent could have subjected one to discrimination. *See United States v. Lacher*, 134 U.S. 624, 629 (1890) (mentioning that in the past "to be seen for a month in the company of gypsies" was punishable by death). While use of the term "gypsy," without more, is insufficient to infer discriminatory intent, when it is used as part of an ethnic stereotype, it may create an inference of prejudice. *See Johns v. Deleonardis*, 92 C 2547, 1994 WL 323164, at *5 (June 30, 1994).

Introduction at trial of witness testimony containing ethnic stereotyping is a constitutional error. *United States v. Vue*, 13 F.3d 1206, 1211-14 (8th Cir. 1994) (convictions reversed when witness testimony potentially made defendants' ethnicity part of the jury's consideration in determining defendants' guilt in violation of the due process and equal protection clauses of the Fifth Amendment). "If government counsel in a criminal suit is allowed to inflame the jurors by irrelevantly arousing their deepest prejudices, the jury may become in his hands a lethal weapon directed against defendants who may be innocent. He should not be permitted to summon that thirteenth juror, prejudice." *Calhoun v. United States*, 568 US __, 2013 WL 656063 (February 25, 2013) (Statement of Sotomayor, J.) (quoting *United States v. Antonelli Fireworks Co.*, 155 F.2d 631,

659 (2d Cir. 1946)). Equal protection is one of defendants' constitutional rights that extend to grand jury proceedings. *See Vasquez v. Hillery*, 474 U.S. 254, 264 (1986).

The Defendant here has not shown any prejudice since the Government presented the Third Superseding Indictment to a different grand jury from the one that received the offensive testimony.

2. False Allegations in Search and Seizure Warrant Applications

The defendant claims that a government agent made false allegations in applications for search and seizure warrants and that this should be grounds for dismissal of the indictment. In particular the defendant alleges that the agent either misrepresented the contents of consensually recorded conversations with some of the defendants or claimed there were such recordings when none existed. False statements in search warrant application(s) are not a ground for dismissal of an indictment. *See United States v Morrison*, 449 U.S. 361, 365, 101 S.Ct. 665, 668-669 (1981) (noting that the remedy for a violation of the Sixth Amendment "is limited to denying the prosecution the fruits of its transgression"); *United States v. Franklin,* 598 F.2d 954, 957 (5th Cir.1979) (indicating that proper remedy for illegally seized evidence was suppression, not dismissal of the indictment); *United States v Mwangi*, 2010 WL 690136 (M.D. Ga. 2010)("violations of the Fourth Amendment have never warranted dismissal of an indictment."); See also, *United States v Blue*, 384 U.S.251 at 255, 86 S.Ct. 1416 at1419 (1966) (Fifth Amendment violations do not bar the prosecution altogether).

Moreover, the Defendant has not demonstrated that any outrageous government conduct was related to the underlying commission of the criminal offense. *United States v. Jayyousi*, 657 F.3d 1085 (11th Cir. 2011).

3. Dismissal Based on Alleged *Brady* and *Giglio* Violations

The defendant next claims that the government has failed or refused to turn over *Brady* and *Giglio* material. *Brady* requires the government to disclose to the defense evidence which is favorable to an accused, where the evidence is material either to guilt or to punishment. *Brady v Maryland*, 373 U.S. 87, 87, 83 S.Ct. 1194, 1196-97 (1963). *Giglio* evidence is evidence of any payments, benefits or other inducements that the defendant can use to impeach a government witness. *Giglio v United States*, 405 US 150 (1972). Dismissal of an indictment for discovery violations would be an extreme sanction that would be authorized only in extraordinary situations. *United States v Campagnulo*, 592 F. 2d 852, 865 (5th Cir. 1979). Actual prejudice must be shown. *Id*. In *Campagnulo* the Eleventh Circuit rejected the conclusion that prejudice was "inherently present" when the Government failed to turn over a statement of the defendant until the day before trial, in violation of the Standing Discovery Order. *Id*.

"Some promises, agreements, or understandings do not need to be disclosed, because they are too ambiguous, or too loose or are of too marginal a benefit to the witness to count." *Tarver v. Hopper*, 169 F.3d 710, 717 (11th Cir. 1999). In *Tarver*, the Eleventh Circuit gave examples of statements that did not need to be disclosed, such as a promise to "speak a word" on the witness's behalf, a prosecutor's statement that he would "take care" of the witness, and a prosecutor's statement that the cooperation of the witness would be "taken into consideration." *Id.* at 716-17.

The Defendant asserts that the Government had refused to turn over *Brady* or *Giglio* material consisting of threats or coaching of witnesses, statements by victims that they were not victims, evidence of slipshod investigation, payment from a victim to a lead investigator, interviews of witnesses that had to be "hit over the head" to persuade them that they were victims, nearly one hundred recorded conversations, the government intervention in a civil case involving a government witness, and records of defendant's gambling winnings. The government correctly points out that

9

it is not obligated under *Brady* to furnish a defendant with information she already has or could obtain for herself. *United States v Campagnuolo*, *supra*, at 861. Furthermore, the rest of the material has either been turned over or the Government has been reminded of its obligations under *Brady* and *Giglio* to timely supply such material. No actual prejudice requiring dismissal has been shown at this point. *United States v Campagnuolo*, *supra*.

In conclusion, it is hereby **RECOMMENDED** that Defendant Rose Marks' Motion to Dismiss the Third Superseding Indictment and the Previous Three Indictments with Prejudice (DE 727) and Memorandum of Law (DE 728) be **DENIED**.

**NOTICE OF RIGHT TO OBJECT**

Pursuant to Local Magistrate Rule 4(b), the parties shall serve and file written objections, if any, to this Report and Recommendation with the Honorable United States District Judge Kenneth A. Marra within *five (5) business days* (until March 12, 2013) after being served with a copy. The Court is expediting any objections to this Report and Recommendation based upon the imminent trial date and pursuant to S.D. Fla. Local Mag. J. R. 4(a). Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein. *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(2); *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (*en banc*).

**DONE** and **SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 5 day of March, 2013.

*James M. Hopkins*
_____
JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE

Copies to:
Hon. Kenneth A. Marra
Counsel of record