UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-80072-CR-MARRA/HOPKINS(s)(s)(s)

UNITED STATES OF AMERICA

vs.

ROSE MARKS,

Defendant.

_____/

FILED by _____ D.C.

AUG 1 3 2013

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

# SUPPLEMENTAL REPORT AND RECOMMENDATION ON DEFENDANT ROSE MARKS' MOTION TO STRIKE EXPERT TESTIMONY (DE 911)

Defendant Rose Marks' Motion to Strike the Expert Testimony (DE 911) and the Government's Supplemental Notice of Expert Testimony (DE 942) are before the Court on an oral order of referral. A hearing was held on August 9, 2013.

Defendant Rose Marks is charged with multiple offenses including mail and wire fraud conspiracy, substantive counts of mail and wire fraud, and money laundering conspiracy, and forfeiture allegations. The charges arise out of an alleged scheme to defraud clients of Defendant's psychic fortune telling business. The Government seeks to introduce the expert testimony of Gregory Ovanessian on the hallmarks of fortune telling schemes.

## THE 8/9/13 HEARING

Mr. Ovanessian testified that he worked as an Inspector with the San Francisco Police Department from 1990-2011. He investigated more than 100 cases of fortune telling fraud. He is a frequent lecturer on fortune telling schemes. He is a past president of the National Association of Bunco Investigators

(NABI). 12-13 of his fortune telling fraud investigations were prosecuted. None went to trial. He was twice deemed an expert in confidence crime, neither involving fortune telling cases. He testified as to the hallmarks of fortune telling fraud fairly similarly to that of Robert Nygard, the previously offered Government expert. Also similarly, Mr. Ovanessian has not studied literature on psychic or religious practices. He believes, albeit not based upon studies of the subject matter, that no psychics possess psychic powers and he does not believe in reincarnation (one of the foundations of fortune telling), again without knowledge of studies of major religions or reincarnation. He testified that in each of the 12-13 cases that were prosecuted, each of the defendants admitted that they possessed no psychic powers. He testified that his focus on the hallmarks of psychic fraud centered on tangible false representations.

## ANALYSIS

### FRE RULE 702

Federal Rule of Evidence Rule 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702, as interpreted by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), requires expert scientific evidence to be both reliable and relevant pursuant to Rule 702. *Daubert*, 509 U.S. at 589. Thus, the evidence must: (1) constitute scientific knowledge; and (2) assist the trier of fact to understand the evidence or to determine a fact at issue. *Id.* at 589-91, 113 S.Ct. 2786. The scientific knowledge question requires the trial court to consider the theory or technique upon

which the testimony is based in light of at least five factors: (1) whether the theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error for that theory or technique; (4) the existence and maintenance of standards controlling the theory or technique's operation; and (5) whether the theory or technique has attained general acceptance within the relevant scientific community. *Id.* at 593-94; *United States v. Gilliard*, 133 F.3d 809, 812 (11th Cir.1998).

Admissible expert testimony is not confined to "true science." *See Maiz v. Virani*, 253 F.3d 641, 669 (11th Cir. 2001) (" *Daubert* applies to all expert testimony, not just 'scientific' testimony. . ."). In assessing the reliability and relevancy of expert testimony the trial court must ensure "that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 1176 (1999). "[S]ome of Daubert's questions can help to evaluate the reliability even of experience-based testimony. In certain cases, it will be appropriate for the trial judge to ask, for example, how often an engineering expert's experience-based methodology has produced erroneous results, or whether such a method is generally accepted in the relevant engineering community. Likewise, it will at times be useful to ask even of a witness whose expertise is based purely on experience, say, a perfume tester able to distinguish among 140 odors at a sniff, whether his preparation is of a kind that others in the field would recognize as acceptable." *Id.* at 151.

"[E]xperts may be qualified in various ways. While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *United States v. Frazier*, 387 F.3d 1244, 1260-61 (11th Cir.2004); *see also Vision I Homeowners Ass'n, Inc. v. Aspen*

*Specialty Ins. Co.*, 674 F.Supp.2d 1321, 2009 WL 4809877, *3 (S.D.Fla. Dec. 15, 2009) (qualification prong for expert testimony is "not stringent" in that "so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility") (citations omitted).

To the extent that expert opinions are derived from literature review, witness interviews and data analysis, they are not automatically rendered unreliable by their non-susceptibility to empirical verification. *See American General Life Ins. Co. v. Schoenthal Family, LLC*, 555 F.3d 1331, 1338 (11th Cir.2009) ("Standards of scientific reliability, such as testability and peer review, do not apply to all forms of expert testimony," and the court has discretion to deem expert testimony reliable based upon personal knowledge or experience). A district court may decide that nonscientific expert testimony is reliable based "upon personal knowledge or experience." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150, 119 S.Ct. 1167, 1175, 143 L.Ed.2d 238 (1999). However, "[n]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Electric Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 519, 139 L.Ed.2d 508 (1997). An important factor under *Daubert* is the testability of an expert's conclusions and theory, which includes the ability to rule out other potential explanations. *See Michaels v. Avitech, Inc.*, 202 F.3d 746, 754-55 (5th Cir.2000).

In determining whether the evidence appropriately assists the trier of fact, Fed.R.Evid. 403 plays an important role in excluding overly prejudicial evidence, because "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (quoting Weinstein, Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended, 138 F.R.D. 631, 632

(1991)); *United States v. Henderson*, 409 F.3d 1293, 1302 (11th Cir. 2005).

"The court serves as a gatekeeper, charged with screening out experts whose methods are untrustworthy or whose expertise is irrelevant to the issue at hand." *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1250 (11th Cir.2007). District courts must consider whether the expert can testify competently on the areas he intends to discuss, whether the expert's methodology is sufficiently reliable, and whether the expert's testimony, through the application of his scientific, technical, or specialized expertise, will assist the trier of fact to understand the evidence. *See United States v. Rouco*, 765 F.2d 983, 995 (11th Cir.1985) (expert may be used if his testimony can offer something "beyond the understanding and experience of the average citizen"), *cert. denied*, 475 U.S. 1124, 106 S.Ct. 1646, 90 L.Ed.2d 190 (1986); *United States v. Burchfield*, 719 F.2d 356, 357 (11th Cir.1983) (*per curiam*) (expert testimony admissible where it is "the kind that enlightens and informs lay persons without expertise in a specialized field"); *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir.1998).

This gatekeeping function is guided by the well-established principle that "[t]he proponent of the expert testimony carries a substantial burden under Rule 702" to show admissibility of that testimony by a preponderance of the evidence. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1107 (11th Cir.2005); *see also Boca Raton Community Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1232 (11th Cir.2009) ("The offering party must show that the opinion meets the *Daubert* criteria, including reliable methodology and helpfulness to the factfinder . . ., by a preponderance of the evidence.").

The proposed testimony does not appear to be reliable according to the criteria discussed in *Daubert* and *Kumho Tire*. The witness offered no insights into how to distinguish between legitimate and illegitimate fortune telling operations. The witness concluded that all psychics were illegitimate, but had not based his conclusion on any studies. Thus he was unable to rule out other potential explanations.

5

*Michaels*, 202 F.3d at 754-55. Consequently his conclusions about the hallmarks of fortune telling schemes have no way of being tested, and no tests of his conclusions were proffered. Likewise no peer review or publication of his conclusions was offered. No known or potential rate of error for his conclusions was submitted. No standards controlling his theories were shown to exist. Furthermore, no general acceptance within the relevant academic community was demonstrated for his conclusions (or lack thereof) about the difference between legitimate and illegitimate psychic practices. *Daubert* at 593-94. The Government is requesting that we rely upon the *ipse dixit* of the witness. *General Electric*, 522 U.S. at 146.

In addition, due to his lack of study and understanding of the legitimate aspects of fortune telling, the witness cannot testify competently on the areas he intends to discuss. *Rouco*, 765 F.2d at 995. Moreover, it has not been shown that the witness can offer something "beyond the understanding and experience of the average citizen." *Id.* It appears that the ordinary juror is just as qualified to determine if the Defendant's fortune telling operation was fraudulent. Tangible misrepresentations can best be analyzed by a jury.

In conclusion, it is hereby **RECOMMENDED** that Defendant Rose Marks' Motion to Strike the Expert Testimony (DE 911) be also **GRANTED** in relation to proposed expert Gregory Ovanessian.

## NOTICE OF RIGHT TO OBJECT

Pursuant to Local Magistrate Rule 4(b), the parties shall serve and file written objections, if any, to this Report and Recommendation with the Honorable United States District Judge Kenneth A. Marra within *five (5) business days* (until August 20, 2013) after being served with a copy. The Court is expediting any objections to this Report and Recommendation based upon the imminent trial date and pursuant to S.D. Fla. Local Mag. J. R. 4(a). Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from

attacking on appeal the factual findings contained herein. *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(2); *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (*en banc*).

**DONE** and **SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 13 day of August, 2013.

*James M. Hopkins*

JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE

Copies to:
Hon. Kenneth A. Marra
Counsel of record